with the attorneys who are making a presentation, please approach the podium and identify yourselves and the party you represent. Good morning, Your Honor. Timothy Heath on behalf of the plaintiff and the counsel Steve Morton, the sub-counsel. Good morning, Your Honors. Richard Linden, L-I-N-D-E-N, on behalf of the defendant Appley. Okay. We've allotted 30 minutes for this case, divided equally, and the plaintiff can, I mean, the appellate can reserve time. Thank you, Your Honor. I'm anticipating probably taking no more than 10 minutes. Okay. All right. Very well. Thank you. Good morning. May it please the Court? Counsel? An essential element to any 214-01 petition is the defendant must show due diligence, both in the original claim as well as in the pursuing the 214-01 petition. In other words, due diligence is required in pursuing any of the potential defenses, both before judgment and after judgment, as the Illinois Supreme Court found in Smith v. Erwin. The trial court here did not make any specific finding about due diligence at all. The trial court simply ignored this essential element. The defendant has not even attempted to show due diligence either before judgment and cannot show due diligence after judgment. But before you get to due diligence, you have to show service. That's correct. Did you ever serve the defendant? I'm sorry? Did you ever really serve him? Yes. You served him at one house that he didn't live in, and then you sent notices to him to addresses that he didn't live in. So when did he get served? He got noticed, but when did he get served? He got served as a result of the February 22, 2010 order for comparative service that was entered by Judge Maddox. And as part of that order, service was required, a summons and complaint was required to be attached along with the order of February 22, setting the March 9 date. And that order and service was sent to three addresses, one of which was the 2947 South Halstead address, which the defendant has subsequently admitted that that was his residence. And so the service, summons and complaint went there to him and was served on him there by mail as set forth by Judge Maddox. That was a negligence count? No, actually, Your Honor, that was the amended complaint that had been changed in January. Judge Maddox's order was entered on February 22, 2010 after the amended complaint had been entered. Then why did you take so long to send a notice of default? Why did you wait 29 days before you mailed it out? I can't personally address that, because A, I wasn't there at the time that it was, and the other thing is that there's nothing in the record that says why that occurred. But even if that did occur, as the court in heirloom, the Illinois Supreme Court has said in heirloom, that's not a sufficient basis by itself to overturn the judgment. There's nothing that says that that was inappropriate. And I would further point out, Your Honor, that in this particular case, the defendant had received notice of every order from February 22, 2010. He got that order, he got the March 9, 2010 order, he got the April 14, 2010 order, the May 3, 2010 order, the May 21, 2010 order, the July 1, 2010 order, September 15, 2010 order, and the December 20, he got notice of the order for December 20, 2010. Isn't there a long line of cases, however, that say that delay in notifying a defendant of a judgment is a basis for relaxing the due diligence requirement of, well, it used to be Section 72 back in the day. It's not 1401. Right. Actually, the case laws that say, that talk about it, there are cases that suggest that that can be a factor, but it has to be along with other things. And it has to be evidence that of the plaintiff having engaged in nefarious conduct. In other words, attempts to prevent the defendant from learning about the case or learning about the judgment. When we consider this case, the notice of the judgment was sent, what, the 28th and 29th day by regular mail? Couldn't we infer that the notice was calculated so he would get notice of the judgment either on the 30th day or just after the 30th day, and therefore, the reason he didn't attack the judgment within 30 days is clear? Well, I don't agree with that, Your Honor. And the reason why I don't agree with that is that if you were assuming that the defendant had no knowledge of the case prior to December 20. We're speaking specifically, the cases that we were looking at were specifically regarding the notice of the judgment itself. And the reason why the defendant didn't, for example, attack the judgment within 30 days after his entry. In this case, it suggested that the reason he didn't attack within 30 days, and his diligence there is excused because he didn't know about it. And the difficulty with that argument is that suggests that you're ignoring the defendant's lack of diligence starting with March 9th, 2010. He shows up in court on March 9th, 2010, and then is given a copy of orders all the way along, seeing the progress of the case. On September 15th, the case was in front of Judge Hogan. Judge Hogan listened to evidence on the motion for default, or I'm sorry, on the default judgment. He heard evidence and heard part of the case at that point in time, and sent out an order saying that we're going to have a subsequent hearing to deal with the merits of this complaint and whether the defendant knew of the conduct of the tenants and whether the defendant was willful and wanted. And that was the hearing on December 20th. The defendant ignored all of that and never showed up. He didn't do anything with that. Now, all of a sudden, his sole thing is, well, gee, I didn't get a copy of the judgment order entered on December 20th in sufficient time to contest within 30 days, and I don't think that that's a basis under any of the case law. Even the case law that talks about allowing that to be a factor to be considered. And I would point out, the Illinois Supreme Court has dealt with this particular argument. If the court may recall, in that particular case, the defendants were negotiating with the plaintiff during the process of the case being moved from default and then proved up. And they did not get a copy of the order until more than 30 days after the judgment was entered. And the Illinois Supreme Court said, you know what? Based on everything that they, given the fact that they knew about the case and didn't do anything about the case before that, that's not a sufficient basis within which to deny or to vacate the judgment under 214.01. And so as a result, the Illinois Supreme Court upheld that. And there is a more recent decision in which the, I believe it's involving Walmart, where the court found that it was a similar type of situation. The plaintiff had been served, or the defendant had been served. They didn't appear. Prove up was ordered. Prove up was given. Judgment was entered. More than 30 days after the judgment, the defendant gets notice and fails to, and then finally comes in and contests. And the court says, sorry, that's insufficient reason for the base, for vacating the judgment under 214.01 petition. Where the defendant had knowledge of the case. Now, but it's one factor. It's one factor in deciding if you're going to vacate a 14.01, granted, excuse me. In terms of the 30 days. It is one factor. It is something that can be. Absolute that it's not. Actually, Judge, if I have suggested that, I apologize. I don't mean to say that it cannot be considered. What I'm saying is that it is a consideration, but it is not a determinative factor. Okay? And that's what the Illinois law provides. What is the legal effect of the failure to have the motion for special comparative service file staff? They're alleging that because it's not file staffed, it's not in compliance with the rules. And since service is not in compliance with the rules, the service is ineffective. And the answer to that is that there is no legal effect to that. And the reason why there's no legal effect is because the statute required that the motion be presented to the judge. And Judge Maddox was the one who heard the motion for comparative service on February 22, 2010. And he was also the one who decided the 214.01 petition. So he had an opportunity to say that my order entered on February 22, 2010 was improper because I was never presented with this material that the plaintiff has now certified was presented to me. Judge Maddox never made any such finding. He never said anything about it. The only thing that we have then is we have evidence submitted by affidavit showing that this was the motion that was submitted. And the fact of the matter is that the law long recognizes when portions of the record are missing because they can't be found in the clerk's office, what happens? How is that solved? And the answer is you get affidavits of people who have knowledge and they submit a copy of the materials and that's used as a substitute for what had been filed with the clerk's office. That's the standard procedure for doing that. That's what happened here. And I don't think that that has any sort of merit whatsoever because one of the things that I would point out is what you'd be suggesting then is that it doesn't matter what the merits that Judge Maddox actually heard and decided on. What matters is what happens to be in the court file. And I don't think that that's a basis for overturning Judge Maddox's decision. The question becomes did he abuse his discretion in entering that order on February 22nd, 2010? And I think the answer to that is no. While we're talking about that, the defendant did file two motions. One was the 214.01 petition and the other was the motion to quash. At one point the motion to quash was ruled upon, then vacated. No, actually, just so the record's clear, Your Honor, you're right that he filed a combined motion. But what Judge Larson found at the initial hearing based on case law that I supplied to her was that as a matter of law, the motion to quash was beyond 30 days and could not, 213.01 doesn't apply. And there's case law that specifically says that beyond 30 days, motions to quash do not apply. And so, therefore, the only basis for the defendant left to proceed was on the 214.01 petition. And so... She later vacated that order? No, she didn't vacate that order. What ended up happening was after she entered that order, we had a full briefing schedule. And what she did was we had an oral argument at which point she raised for the first time the local motion judge's rules about how to handle a default judgment. And I pointed and she said, well, I'm going to grant the 214.01 petition, not on anything that the defendant presented in their petition, but based on the violation of that motion judge's rule. I suggested to her that that wasn't really proper, but basically what we ended up doing was we ended up filing a motion to reconsider the July 21st hearing, the July 21st order. And I presented her with lots of cases showing that the local judge's rule could not add more requirements than is required under the Supreme Court rules or the statute regarding notice of a default motion. And because the defendant was not entitled to notice of a default motion under the Illinois Supreme Court rules or under any statute, Judge Larson then said, oh, okay, you're right, plaintiff, I'm going to vacate my July 21st decision and we're now back to a 214.01 petition, but now I'm going to send it to Judge Maddox because he's the one that entered the February 22nd order. So as a consequence, that's where we're at. So the personal jurisdiction question is within the 214.01 motion. And so what we're going to hear in a few minutes is that even putting aside the filing or the lack of filing of the motion for a substitute service, we should find that service to be a nullity because diligent efforts were not made to effectuate actual service. And that's shown from the affidavits that were brought forward showing that the service was tried at the wrong address. Well, actually, Your Honor, I think if you look at the affidavits of Matt Sims that were submitted in support of the motion, the motion for comparative service, what you'll find is that there were several addresses that were tried, including the 2947 South Halstead address. There was an attempt, an alias summons was issued and an alias summons was attempted to be served at people on that address to no avail. And as asserted in the motion, the people didn't, would come to the door and then walk away. And what under Smith, the marriage of Smith and the Waller case, I'm sorry? There was actually, if you look closely at the affidavit and the motion, there are, both addresses are mentioned, both the 2947 as well as the 20, and I forget the other, the 35 address. So actually, both of them are mentioned. All of, there are three addresses that were associated with this defendant's name, attempts to serve him was made at all three addresses and were attempted to be served at people on that address to no avail. Now, under the statute, under 203.1, all that's required is the court to look at whether diligence attempts have been made, and if they have been, if the court finds that there's a reasonable basis for saying that diligence has been attempted, then there's a basis for entering that order. And this court would then have to say, Judge Maddox abused his discretion in granting that order, which I don't think there's any basis for. Well, once the order is entered, the service does have to go to the address, a reasonable address where the defendant is served. I agree, Your Honor, and it did. As the affidavit set forth by Mr. Sims and Mr. Luckey, the summons was sent out by regular mail to all three addresses. And in fact, it was sent out to all three addresses, not only for the summons and complaint that was issued after February 22nd, but also as a April 14th order, that was sent out again, even though there's no legal requirement to do so. When he was defaulted, there was no legal requirement to send him a copy of the order when an order was sent. On May 3rd, no legal requirement to send him an order. All three addresses got the order. July, May 21st, July 1st, September 15th, December 20th. All three addresses got orders, according to the affidavits. There's no contrary evidence. The defendant never produced any evidence to contest that. So at no point in time did the defendant ever contest all of that evidence. So respectfully, there is the uncontested record demonstrates that he was served properly in response to the February 22nd order, and he appeared. Not only do we know that it was sent out, he appeared on March 9th. The only way he would have appeared on March 9th is if he had a copy of the February 22nd order that Judge Maddox required be included along with the summons and complaint. And so he appeared in court and asked for time. That tells us that it was successful. This is not the situation where we have a defendant who never appears prior to judgment and never has an opportunity to be heard. I realize that I've gone past my time. You have time for rebuttal. Thank you, Your Honor. I just want to ask you, the footnote in your brief, the footnote 1 that shows the many different attempts at service, is that information that was also in the motion in the affidavit that was presented in the trial court? Let me check to make sure I'm on the same page with you, Your Honor. Was the plaintiff attempted to serve the defendant in this case at 2947 on all these separate dates? That's contained in the, yes. Footnote 1, yes. Page 27. Yes, that information is all contained in the motions and affidavits that were submitted, as I've quoted here in the, I've given the records. Okay, thank you. Record citations. Thank you. May it please the Court. Counsel, again, my name is Richard Linden and I represent a defendant in this case. I think one of the most important aspects of this case not to lose sight of is we're talking about an abuse of discretion by Judge Maddox. And the case law is very clear that it has to be that no reasonable person could agree with Judge Maddox that it was proper to vacate the judgment in this case. And I think that's an extremely, you know, important point. In the cases, many of the cases cited by the plaintiff here involve cases where in the Elder case and the Walmart case are both cases where the court denied a motion to vacate. And the question on appeal was whether or not they abused their discretion in denying it. You know, so that's a completely different situation than what we're presenting here. Based on the totality of the facts and circumstances, if you look at the case law under 1401, I think it's Paul case says that there's no right-line test determining due diligence. They have to look at all the facts and circumstances of the case. And counsel gets up here and says, you have to show due diligence. And that's not entirely correct. In the general case, you're required to show due diligence in presenting your petition to the court. But there's exceptions to that. One exception is if you have to do justice. The whole purpose of 1401 is to do justice and to prevent a manifest injustice here. As we set forth in our brief, we have a $1.54 million judgment based upon these facts and circumstances. To let it stand would be an injustice and, I believe, unconscionable. Well, why would it be an injustice if the defendant ignored the case for an entire year? At some point in time, the judges over in the Daly Center, they have to bring these things to a conclusion. And isn't it an affront to the court when a defendant stands in the well of the courtroom and says, okay, I got the complaint. I'm going to go get a lawyer, and then never comes back again? I believe under these circumstances, it would not be. And here's why. Well, what was he doing for that year? The record isn't real clear. Well, isn't it his obligation to make a record and show us why he didn't do anything for an entire year? I don't believe so. First, they have to show that there's proper service here, that the court acquired jurisdiction. The defendant, I think, would be reasonable if he showed up in court, if there wasn't jurisdiction. The law is real clear under 2-302 that merely requesting time to answer or get an attorney is not the submission of jurisdiction. So it's really the ends don't justify the means. The fact that he showed up in court does not indicate whether or not the court ever acquired personal jurisdiction. You have to look, and number one, was he served with traditional service process? And I believe it's uncontested that he was not under 2-203. Then you have to look at 2-203.1 and ask yourselves, did they properly go through 2-203.1? If you didn't, it's really inconsequential whether or not he showed up or not in court. The court has to acquire jurisdiction over the person. And the case law is very clear that if you don't have jurisdiction, it's a void judgment, and judgment's null and void. And it could be attacked any time without any type of showing of due diligence. So it's our position there was not. There's also a very long line of cases saying that if you fail to state a cause of action, that judgment's void, and you're not required to show due diligence under 2-1401. In this case, if you look at the complaint, and we set forth specifically in our brief, and we even filed a 615 motion that's still pending before the trial court, before Judge Larson, that there's no underlying duty of care set forth in the complaint. The law is very clear that typically a landowner does not have a duty to protect third parties from criminal acts of a third party. But even when Maddox ruled on the 1401, didn't he rule or fine them that they did have proper service? That's why he granted them vacating the judgment. He had to get to that point to even get to a 1401. I don't think he ever considered that, I think. I think his comments was, you know, the man showed up in courts and definitely must have got notice. I think that's quite a bit different to say that he got notice to show that he's properly served. Judge Maddox didn't make any comments. He didn't go through with their petition whether or not it was adequate. And I do think it's important that the motion was never filed. It's not a case where a plea was lost and the court filed like council talks where you have to reconstruct it. Mr. Sims admits in his affidavit that the motion was never filed. I have seen the cases where service by a special process server who has not officially made a special process server has been determined invalid. In this case, there was an order saying, okay, counsel, you can mail it. And that mailing would be sufficient, although the motion to request that permission is not filed. What is it about the filing that makes the order itself void? I mean, first of all, I think you have to be assured in the case law requires strict compliance with 203.1. The fact that you don't have a final motion, that there are at least some doubts and questions of what was really before Judge Maddox. I think this court knows how many cases Judge Maddox has in 2005. For him to go back a couple years later and say, God, did I consider this written motion? It's just an entire integrity of the court system that one of the basic fundamentals is if you're going to have a pleading considered by the court, it's not an awful lot to ask to go down to room 802 and file a darn thing. That it's not Judge Maddox's responsibility or his clerk's responsibility to file a motion. And I think that lends credence to the due diligence argument. Not only do I believe that the motion has to be filed under 203.1, we set the local rules of Cook County that require motions to be filed. I mean, I think that's just a basic concept, but another factor is if you go, the fact that it wasn't filed, if somebody went to the court and filed, you would never know that there was ever a proper motion for Judge Maddox to consider. And that goes to the due diligence. Whether or not, if a party has a reasonable belief to believe that he wasn't served and there wasn't process, he's not required to file a case or come to court. It's incumbent upon the plaintiff to effectuate proper service. And in this case, there would have been no record of it, and I don't believe there's any evidence that the defendant was properly served or processed. And counsel talked about Judge Larson when she vacated the order that she somehow ruled that she was incorrect in the motion judge rules. That wasn't the case. If you look at Judge Larson's vacating her order, what happened was Judge Larson said, if you look at the order, she said it was premature, and the reason why she said it was premature was she realized that we did challenge the personal jurisdiction of the case. And Judge Larson looked and said, well, it's Judge Maddox that ruled under 203.1, so that's the reason she vacated it and sent it to Judge Maddox. She never made any determinations that the motion judge rules didn't apply. And I think that's one factor here that can be considered with all other factors. Motion judge rules do require notice of a default, even order, to be provided to all counsels who have appeared or have been served, and this wasn't the case here. And I do think it's a very important point that counsel waited 29 days. I don't think anybody's stupid or naive. I mean, there's a clear reason why they waited 29 days. According to them, they sent every other order, and if you look on the day the orders were added, on this particular order, the most important order in the case, I mean, I'm sure they counted down the days and they said, okay, 29 days, we mail it. It typically takes two days. By the time the defendant gets it, he's going to be past the 30 days for a 2-1301 motion, which is much more easier to accomplish. So based upon the totality of the circumstances here, I don't believe it can be said that Judge Maddox abused his discretion. I mean, there's no basis, if you look at the complaint, that they even stated a cognizable cause of action. And there's only three exceptions or four exceptions we lay out in our brief where a landowner may have a duty to protect a third party. One is if there's a special relationship. The Roe case, and I believe the Sanchez case, says that by virtue of a landlord tenant, a landlord doesn't have a special relationship for a duty. The only possible exception in this case would be if the defendant voluntarily or contractually assumed a duty to protect against criminal acts. And if you look at their amended complaint, there's no allegations of it. Basically, the apartment was in a high-crime area, there was criminal activity, and the defendant owed a duty conclusionary and failed to protect. There's no facts whatsoever to indicate that my client ever contractually or voluntarily assumed a duty. And I think what the courts talk about is if you start to provide security, like alarms or lights or whatever, and you do so negligently, you can be charged with the exception for that. But if you do nothing, if there's no facts you ever sought out or had procedures, then there's still no duty. And the case law is clear that if the underlying complaint does not state a cause of action, that the judgment is void and can be attacked anytime and without respect to due diligence. We cite a case where there's a land trust and they obtained a judgment against the land trust and the land trust obviously had no underlying responsibility that they're simply the legal owner. And the court went back and said there's no basis to impose liability on the land trust even though you can't show due diligence here. It would be unconscionable to let a judgment like that stand when there's no underlying duty. And if the court has any other questions, I think everything's pretty much set forth. Any questions? Okay. Thank you very much. Counsel started out his argument about in order for this Court to overturn the Bill the judgment in this case would have to find that Judge Maddox abused his discretion. And as noted in the Hirsch v. Optima Inc. Case 397-0F3-102, page 109, the trial court abuses its discretion if it fails to apply the proper criteria when it reviews the facts. And a reviewing court must consider both the legal adequacy of the way the trial court reached its result as well as whether the result is within the bounds of reason. When Judge Maddox was considering whether to grant the 214-01 petition or not, Judge Maddox was required to find by the preponderance of the evidence that the petition was supported. And that's Smith v. Arrow Room 114, Illinois 2nd, 209. So in other words, the defendant had the burden of proof in front of Judge Maddox to show all of the elements. To show that there was diligence in presenting his claims as well as showing that there was not proper service. What about the equitable relief, though, that you need to request? And then what duty did the landlord owe to this tenant? Okay, well, with respect to the equitable relief, the first question that you asked there, Your Honor, that was specifically talked about in the Arrow Room case. And it says, while a liberal construction must be given to the petition to prevent an unjust result, the ambit of Section 214-01 relief must not be overbroadened to such an extent that the principles of equity and an ordered concept of justice are diluted. And in that particular case, as in the Johnson v. Walmart case, as several others, the plaintiff got the judgment, waited more than 30 days, and then sent out the notice. Sent out information to the defendant that a judgment had entered. And in each one of those cases, the court found that's not a problem. Because there wasn't, they're looking for, the Arrow Room court said, additional circumstances must exist which would compel the conclusion that the party obtaining the ex parte judgment would gain an unfair, unjust, or unconscionable advantage if the judgment were not vacated. In this particular situation, you would have to ignore that the defendant had notice and opportunity to be heard starting from March 9th all the way through to December 20th. That he just didn't bother to appear in response to these orders that were being entered on his case. You'd have to ignore all that and then say, well, the reason why he didn't appear was he didn't get the judgment order in time. And I don't think that that would be an appropriate resolution. With respect to your other question. The duty. Yes. It is true that there are limited circumstances in which a landlord owes a duty to a person to prevent a criminal act. In this particular situation, though, presents a very unusual circumstances. You look at the case laws, like even the Roe case, what you see is that the criminal is an unknown third party. And it's not the tenant. As was the case here. Here, the allegations of negligence and the defendant rented the property to the very perpetrators that were involved in this horrible, heinous act. This woman was anally raped by the tenants of the property. The defendants knew. The defendant knew of the conduct of the insane deuces. He had evidence about that. Judge Hogan, who is a very competent, very well-known, well-regarded trial judge, heard evidence not just based on what happened in the rape, but he had a specific hearing to hear evidence about the willful, wanton conduct by this defendant. Consequently, this isn't just a matter of a judgment being entered on the basis of allegations made in the complaint. This is a judgment based on actual evidence.  any sort of evidence, any sort of information or record about what that evidence was. And so... So the landlord's, say, act was renting an apartment to a known gang member. Is that what you're saying? And that makes it willful and wanton? Yes, and it's part of it. And then not doing anything to prevent the crime that was occurring at his property. He has an obligation to prevent that. And how many other crimes happened at his property? Because that's what the case is that you quoted states. In terms of after the landlord has knowledge of the people breaking through the apartment building, from the vacant apartment building to getting to the other apartment building, or the landlord who leaves the ladder on the outside and people keep using the ladder to break into the apartments, what other actions did this landlord know about prior to the rape? And the answer to that was the evidence was produced to Judge Hogan. I'm in a difficult position here, Your Honor. I wasn't present at the hearing. So I can't give you verbatim what happened. I can tell you that there was, in the affidavit of Matt Simms, or Matt Lukey, which is contained in the record, he did testify that he was present and that there was evidence produced about the defendant's knowledge. And there was specific testimony. Witnesses were brought in to testify to it. We do not have a record here to do that, to base that determination on. But if that was the legitimate, if that was the real question or the real crux of what Judge Maddox was basing on, then that should have been dealt with in front of Judge Maddox and the defendant had an obligation to present evidence that what Judge Hogan based his decision on was insufficient to withstand a judgment. That's where that needs to be. And that didn't happen. So now we're at a different, a wholly different position now of not having the record of the trial that occurred in front of Judge Hogan. But we do have his orders making a specific finding, which we have to assume was based on evidence sufficient with the law that the defendant was willfully wanton and reckless in what he did. And so... I'm sorry. There's a 2-6-15 motion pending with regards to whether or not the cause of action was stated. Is that right? Well, that was filed after the 2-14-01 petition was granted, originally by Judge Larson and then vacated. So it's still out there? Yes, but it would have no legal effect because Judge Maddox should not have granted the 2-14-01 petition. If Judge Maddox abused his discretion in granting the 2-14-01 petition because the defendant failed to show due diligence, then the 2-6-15 motion would have no legal effect. Thank you very much. I'll remind my briefs.